UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KAYDON CORPORATION,

       Plaintiff,                            Case No. 1:09-cv-257

v.                                                  HON. JANET T. NEFF

DANIEL GEDDINGS,

       Defendant.

_____/


## OPINION

Pending before the Court in this removed case is plaintiff's "Motion to Remand" (Dkt 14) and defendant's "Motion to Set Aside Default Judgment and Dismiss for Lack of Personal Jurisdiction" (Dkt 33). For the reasons discussed herein, the Court grants plaintiff's motion and remands this case to the state court from which it was removed. Accordingly, the Court declines to decide the merits of defendant's motion.

### I. BACKGROUND

Plaintiff Kaydon Corporation is a Delaware corporation that designs and manufactures custom engineered products, including large bearings used in wind turbines (Compl. [Notice of Removal Exh. 1] ¶ 5). Defendant Daniel Geddings is an engineer. Defendant began working in plaintiff's South Carolina facility in June 2002 (*id.* ¶ 13). At the time of his hire, he signed a twelve-month Non-Compete Agreement and an Employee Patent and Confidential Information Agreement (*id.* ¶¶ 21-23). He worked as a "Process Engineer" for one year then as a

"Manufacturing Engineer II/CNC Programmer" (*id.* ¶¶ 15-18). Plaintiff alleges defendant was privy to extensive knowledge about its manufacturing processes and the specifications and requirements of its customers (*id.* ¶ 20). Plaintiff alleges that from 2006-2008, it invested over $50 million and thousands of employee hours to develop and improve its large bearing manufacturing processes (*id.* ¶ 9).

On March 31, 2008, defendant resigned from his employment with plaintiff (Compl. ¶ 13). In May 2008, he moved to Texas where he began working for RBC Coastal Bearings ("RBC"), plaintiff's competitor, allegedly performing duties nearly identical to his duties for plaintiff (*id.* ¶¶ 25-27).

On April 15, 2008, plaintiff filed suit against defendant in the circuit court for Muskegon County, Michigan, alleging breach of contract (Count I) and misappropriation of trade secrets under Michigan's Uniform Trade Secrets Act, MICH. COMP. LAWS § 445.1910 *et seq.* (Count II). Plaintiff sought various forms of injunctive and monetary relief, including damages in an amount caused by defendant's unlawful breach of his contractual obligations, exemplary damages, costs, interest, and attorney fees. The Muskegon County Circuit Court issued a Temporary Restraining Order that same day and a preliminary injunction on April 29, 2008, ordering defendant to (1) immediately cease his employment with RBC until March 31, 2009; (2) immediately cease and refrain from contacting or soliciting plaintiff's customers; and (3) immediately cease and refrain from divulging trade secrets (Notice of Removal Exhs. 2-4). Defendant did not file an appearance or responsive pleading in the Muskegon County Circuit Court case.

On May 22, 2008, a clerk in the Muskegon County Circuit Court entered a default against defendant (Notice of Removal Exh. 5). Plaintiff filed a Motion to Enter a Default Judgment, which

the Muskegon County Circuit Court heard on July 28, 2008. Defendant did not appear. At the hearing, plaintiff's counsel indicated his understanding that defendant was contesting the trial court's exercise of personal jurisdiction over him (Dkt 9-2 at 4-5). To account for that jurisdictional challenge, plaintiff sought to put proofs on the record in the form of testimony from Scott Hansen, plaintiff's Vice President of Engineering in Muskegon, testimony that the state court judge permitted.

In his testimony, Hansen described defendant's position with plaintiff and the contacts defendant had with the Muskegon, Michigan engineers during his employment. Defendant's purported contacts with the Muskegon engineers were the following: six business trips, an average of eight to ten telephone conversations per week, an average of two e-mails per week, and an average of one electronic material disposition order (MDO) per week (Dkt 9-2 at 9-10).

The Muskegon County Circuit Court made the following ruling from the bench:

> The Court adopts as its findings of fact the uncontroverted testimony of [Scott Hansen]. The Court finds that Mr. Geddings had sufficient contacts with the State of Michigan in the context of the subject matter of this lawsuit and the relationship of the parties that the Court does have in personam jurisdiction over the Defendant. Apparently, he's been served and failed to answer. A default was entered, and he was notified of the hearing for entry of this judgment today, and he's failed to appear. He's submitted nothing in writing that I am aware of in opposition. [Dkt 9-2 at 11]

The court entered a default judgment in plaintiff's favor, reciting the same provisions of the prior TRO and preliminary injunction that restrained defendant's employment and awarding plaintiff its attorney fees ($39,109.50) and costs ($4,335.79) (Notice of Removal Exh. 6-A). The default judgment was effective nunc pro tunc as of April 15, 2008.

In the fall of 2008, defendant made two unsuccessful attempts to undo the default judgment against him. First, defendant filed a Motion for Relief from Entry of Foreign Judgment in a South

3

Carolina action that plaintiff pursued; however, the South Carolina action was eventually dismissed by the parties' stipulation in February 2009 (Notice of Removal Exh. 6-C; Notice of Removal Exh. 6 at 4, n. 2). Second, defendant and RBC filed suit against plaintiff in a Texas state court, seeking a declaratory judgment on defendant's rights under the employment agreements, the personal jurisdiction of the Muskegon County Circuit Court over him, and plaintiff's "interference" with RBC's ability to employ defendant (Notice of Removal Exh. 6-D). However, on February 18, 2009, the Texas court granted plaintiff's motion to enforce the default judgment (Notice of Removal Exhs. 6-E, 6-F).

On or about March 9, 2009, plaintiff filed in the Muskegon County Circuit Court a Motion to Re-Open Case, requesting an Order to Show Cause why defendant should not be held in contempt of court inasmuch as defendant has "directly and openly violated that Default Judgment by actively working for RBC CBS Coastal Bearings" (Notice of Removal Exh. 6). Plaintiff also moved for additional attorney fees of $51,104.60 incurred since July 21, 2008. Last, plaintiff moved for an extension of the injunctive period set forth in the default judgment "by a period of time equal to the time that defendant has violated the Non-Compete Agreement."

On March 20, 2009, before the Muskegon County Circuit Court decided the motion pending before it, defendant removed the case to this Court, filing a "Notice of Removal by Way of Special Appearance" and invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. On April 20, 2009, plaintiff served a Motion to Remand on defendant and filed a Certificate of Service in this Court reflecting the same (Dkt 7). On May 18, 2009, plaintiff filed the Motion to Remand in this Court (Dkt 14). Defendant filed a response in opposition to plaintiff's Motion to Remand (Dkt 16), and plaintiff filed a reply (Dkt 17).

Defendant proposed filing a motion for this Court to set aside the state court's default judgment for lack of personal jurisdiction and to similarly dismiss the matter at bar for lack of personal jurisdiction (Dkt 4). Following a Pre-Motion Conference on June 10, 2009, this Court issued a briefing schedule on the personal jurisdiction question, permitting the parties to brief the question in conjunction with this Court's review of the pending Motion to Remand. Defendant subsequently filed the instant "Motion to Set Aside State Court Default Judgment and Dismiss for Lack of Personal Jurisdiction" (Dkt 33), to which plaintiff filed a response in opposition (Dkt 35), and defendant filed a reply (Dkt 33).

Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

The law does not dictate a sequencing of jurisdictional issues; rather, a federal court may choose among threshold grounds for denying audience to a case on the merits. *Aarti Hospitality, LLC v. City of Grove City, Ohio,* 350 Fed. App'x 1, 5-6 (6th Cir. 2009) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 578, 584-85 (1999)). Although there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry, expedition and sensitivity to a state court's coequal stature impels a federal court to customarily first resolve doubts about its jurisdiction over the subject matter. *Ruhrgas,* 526 U.S. at 578, 587-88. Accordingly, this Court first turns to plaintiff's Motion to Remand.

A.   **Plaintiff's "Motion to Remand"**

Removal of cases from state to federal court is authorized by 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States ... where such action is pending." Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a).

The statute setting forth the removal procedure provides that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). The statute further provides that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." *Id.* Hence, per the plain language of the statute, the opportunity to file a notice of removal after thirty days is only available when a case "is not removable" initially. *See, e.g., Walters v. Kentucky-American Water Co.,* 2010 WL 1563497, at *4 (E.D. Ky. Apr. 19, 2010); *Deutsche Bank Nat'l Trust Co. v. Mitchell,* 2008 WL 2812018, at *4 (E.D. Ky. July 18, 2008).

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 549-50 (6th Cir. 2006). The

statutory procedures for removal are to be "strictly construed." *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 32 (2002); *Her Majesty the Queen in Right of Province of Ontario v. Detroit,* 874 F.2d 332, 339 (6th Cir. 1989).

Plaintiff proffers two arguments in support of its Motion to Remand this matter back to state court. First, plaintiff argues that defendant's March 20, 2009 Notice of Removal to this Court was untimely filed nearly one year after plaintiff filed its complaint (Pl. Mot., Dkt 15 at 5-8). Second, plaintiff argues that its Motion to Re-Open the Michigan case is an "ancillary proceeding" that is not removable as a matter of law. Plaintiff requests not only a remand but also an award of its just costs and actual expenses, including attorney fees, incurred as a result of the removal.

In response, defendant asserts that plaintiff's Motion to Remand is untimely (Def. Resp., Dkt 16 at 2). On the merits of plaintiff's motion, defendant apparently concedes that the parties are diverse but argues that it could not have ascertained that the Michigan case was removeable until it was clear — based on the additional attorney fees sought — that the amount in controversy satisfied the $75,000 threshold for diversity jurisdiction (*id.* at 2-6). According to defendant, diversity jurisdiction in this Court arose not when plaintiff filed its complaint in April 2008, but in March 2009 when plaintiff filed its post-judgment motion to have defendant held in contempt of court for violating the default judgment (*id.*). Moreover, in response to plaintiff's argument that the state court proceeding is not removable, defendant responds that the proceeding in this Court is not "ancillary" but the vehicle by which he plans to seek relief from the default judgment entered against him (*id.* at 6-7).

1. *Plaintiff's Motion to Remand was Timely Made*

7

The first issue raised by the parties is whether plaintiff's Motion to Remand is untimely. 28 U.S.C. § 1447(c) provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Plaintiff's service and filing of its motion were not contemporaneous due to some confusion about whether and how this Court's pre-motion conference guidelines applied to the motion. However, even if the Motion to Remand plaintiff served on April 20, 2009 was not "made" within 30 days after defendant's March 20, 2009 filing of the Notice of Removal, the delay between plaintiff's service and filing was neither lengthy nor done for tactical gain, and the Court perceives no prejudice to defendant from the delay in filing where defendant was on actual notice of the grounds for remand asserted by plaintiff. *See, e.g., Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F. Supp. 2d 357, 370-72 (S.D.N.Y. 2006) (where the plaintiffs' original motion to remand was filed within 30 days after removal, no prejudice arose from the delay in filing a renewed motion where the plaintiffs were attempting to comply with the district court's pre-motion conference process). On the facts of this case, the Court rejects defendant's timeliness challenge and holds that plaintiff's April 20, 2009 Motion to Remand satisfied the statutory purpose of timely alleging defects in defendant's March 20, 2009 Notice of Removal.

2. *Defendant Has Failed to Prove that Removal Is Proper*

At issue next is whether defendant's Notice of Removal was untimely filed in March 2009 because the $75,000 amount-in-controversy minimum for securing diversity jurisdiction in this Court was apparent from the allegations in plaintiff's April 2008 complaint. *See* 28 U.S.C. § 1446(b) (indicating that if the case stated by the initial pleading is "not removable," then a notice of removal may be filed within thirty days after receipt by the defendant, through service or

otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable").

"It is generally agreed that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 376 (6th Cir. 2007) (quoting *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro,* 129 Fed. App'x 194, 195-96 (6th Cir. 2005)). Additionally, where provided by contract or statute, attorneys' fees are includable in determining the amount in controversy for purposes of diversity. *Id.* at 376. Last, a complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 510 (6th Cir. 1992).

The April 2008 complaint plaintiff filed in the Muskegon County Circuit Court did not specify the amount of monetary damages sought, other than to state that the money damages sought were in excess of the state court's $25,000 jurisdictional threshold. Indeed, relative to Count II, in particular, plaintiff alleged that "[t]he injury caused to Kaydon by Geddings's misappropriation of its trade secrets and resulting unfair competition is, and will be, irreparable in that it is difficult to quantify the loss of secret processes, customer goodwill, customer relations, and competitive market position" (Compl. ¶ 42).

However, "even where the amount of damages is not specified, if the defendant is able to ascertain from a fair reading of the complaint or other papers filed that the minimum jurisdictional amount exists, he cannot 'sit idly by' while the statutory period runs." *McCraw v. Lyons,* 863 F.Supp. 430, 434 (W.D. Ky. 1994) (quoting *Keller v. Carr,* 534 F. Supp. 100, 103 (W.D. Ark. 1981)). "When the defendant should clearly ascertain from the circumstances and the original

9

complaint that the case is removable, the defendant must remove, if at all, within 30 days of receipt of that complaint." *Mielke v. Allstate Ins. Co.,* 472 F. Supp. 851, 853 (D.C. Mich. 1979) (deciding to grant the plaintiff's motion to remand "[a]s a result of the defendant's laxity in taking steps for removal within the time required by the statutes").

Plaintiff's requested monetary relief included (1) damages in an amount caused by defendant's unlawful breach of his contractual obligations, which plainly implicated plaintiff's investment in defendant (his compensation and benefits) and its $50 million investment in developing a competitive advantage in the large bearing design and manufacturing field; (2) exemplary damages; and (3) its costs, interest, and attorney fees, as provided by the parties' employment agreements. The Court agrees with plaintiff that from the circumstances and complaint in this case, defendant should have ascertained in April 2008 that the totality of these requested damages would reach this Court's jurisdictional threshold. That defendant himself allegedly did not *believe* until nearly one year later that the action was removable based on the parties' diversity of citizenship and the monetary damages at issue is irrelevant to this Court's inquiry. By the time defendant filed his Notice of Removal, the time for doing so had long expired.

This Court is not persuaded by defendant's argument that a different result is compelled because the dollar amount of the default judgment plaintiff ultimately obtained in state court was less than this Court's minimum jurisdictional threshold of $75,000. As defaults are not favored by the law, with any doubts usually resolved in favor of the defaulting party, the Court is not convinced that the amount obtained by default necessarily reflects the amount in controversy.

In sum, this Court determines that this case was untimely removed from the state court. "Because state courts are well-equipped to handle diversity cases, there is no reason to allow a

defendant additional time if the presence of grounds for removal is unambiguous given the defendant's knowledge and the claims made in the initial complaint." *McCraw v. Lyons,* 863 F. Supp. 430, 434 (W.D. Ky. 1994) (citing *Mielke, supra,* at 853).

3. *Not an "Ancillary" Proceeding*

Plaintiff's remaining argument is that defendant's March 2009 removal is also improper because all that remains of the action in state court is the enforcement of a judgment. Plaintiff relies on *Ohio v. Doe,* 433 F.3d 502, 506 (6th Cir. 2006), where the Sixth Circuit found that a 2004 subpoena enforcement action was clearly "ancillary, incidental, or auxiliary" to the defendant's 2002 fully-litigated contempt proceedings, and the Court declined to permit the defendant's "belated removal" of the subpoena enforcement action.

The Court is not persuaded that this argument provides an additional basis for finding defendant's removal improper in this case. Defendant did not attempt to remove only the proceeding on plaintiff's Motion to Re-Open Case, which is the proceeding plaintiff argues is "ancillary" to the complaint it initiated in state court. Rather, defendant seeks a hearing in this federal forum on the entire state court claim, principally, the propriety of plaintiff's default judgment against him. Hence, the restriction on this Court's jurisdiction that plaintiff attempts to invoke is inapplicable on these facts.

4. *Costs and Fees*

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Although plaintiff has not yet provided supporting documentation for its concomitant request for

11

costs and attorney fees, this Court will give initial review to the request to determine whether costs and fees are warranted under the circumstances presented.

District courts have "considerable discretion" to award or deny costs and attorney fees under § 1447(c). *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005); *Warthman v. Genoa Twp. Bd. of Trustees,* 549 F.3d 1055, 1059 (6th Cir. 2008). In *Martin,* 546 U.S. at 140, the Supreme Court observed that Congress designed the costs-and-fees provision in § 1447(c) to permit removal in appropriate cases, while simultaneously "reduc[ing] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." In cases where removal was not objectively reasonable, courts are to consider this underlying purpose when they exercise their discretion. *Warthman,* 549 F.3d at 1060. "In general, objectively unreasonable removals should result in fee awards to plaintiffs." *Id.* However, district courts should consider whether "unusual circumstances warrant a departure from the rule in a given case." *Id.*

Here, for the reasons previously stated, removal of this case from state to federal court nearly one year after the commencement of the action was not objectively reasonable. The Court finds no unusual circumstances that would warrant a departure from the general rule that a costs and fee award to plaintiff should result. Plaintiff may therefore tax its just costs, and this Court will entertain a motion from plaintiff, with supporting documentation, for any actual expenses, including reasonable attorney fees, that plaintiff incurred as a result of the removal.

**B.     Defendant's "Motion to Set Aside Default Judgment and Dismiss for Lack of Personal Jurisdiction"**

Having determined that this Court does not have removal jurisdiction over this matter, it is unnecessary for this Court to also resolve whether this Court lacks personal jurisdiction over defendant. *See Ruhrgas,* 526 U.S. at 578, 587-88. Likewise, because the case will return to state

court, it is appropriate to leave for the state court's decision whether its default judgment against defendant should be set aside for lack of personal jurisdiction. This Court therefore declines to decide the merits of defendant's "Motion to Set Aside Default Judgment and Dismiss for Lack of Personal Jurisdiction."

### III. CONCLUSION

The Court grants plaintiff's Motion to Remand (Dkt 14) and consequently declines to decide the merits of defendant's "Motion to Set Aside Default Judgment and Dismiss for Lack of Personal Jurisdiction" (Dkt 33). An Order consistent with this Opinion will issue.

DATED: April 27, 2010                /s/ Janet T. Neff
                                     JANET T. NEFF
                                     United States District Judge